**Louis S. CLARK, Executor of the Estate
of William H. Clark, Deceased,
Plaintiff-Appellee,**

v.

**Jesse BROWN, Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Feb. 18, 1983.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 1, 1983.

Thomas D. Williams, Memphis, for defendant-appellant.

Lloyd C. Kirkland, Jr., Memphis, for plaintiff-appellee.

TOMLIN, Judge.

The defendant, Jesse Brown, appeals to this Court from an adverse decree by The

---

Honorable Wil V. Doran, of the Chancery Court of Shelby County, granting plaintiff's motion for summary judgment. This case involves a dispute between the decedent's son and a long-time friend of the decedent, over the proceeds in a checking account in First Tennessee Bank. Plaintiff claimed that the account was an individual account. The defendant Brown claimed that the account was a joint account between him and the decedent, with a right of survivorship. The ultimate issue presented to this Court for disposition is whether or not the chancellor erred in granting plaintiff's motion for summary judgment. We hold that he did not, and we affirm.

In his complaint, plaintiff sought an injunction in the recovery of the controverted bank account. He alleged that the decedent died on September 1, 1981, at the age of 87; that under the terms of his last will and testament the deceased bequeathed to his nephew the funds on deposit in a checking account at First National Bank of Memphis (now First Tennessee Bank), and that at the time of decedent's death there was in existence such a bank account. Plaintiff further alleged that at the time he sought to have the account transferred to him, as executor of the deceased's estate, the bank advised plaintiff that in early August, 1981, just a few weeks prior to decedent's death, the deceased signed a signature card, adding the name of the defendant Brown to his account, and also creating a survivorship account. Plaintiff also alleged that for months prior to his death, the deceased was senile, suffering from hardening of the arteries, and that he was incompetent to handle his own affairs, and that plaintiff's decedent did not intend to create a survivorship account, naming the defendant Brown as the survivor. In his answer the defendant Brown denied that W.H. Clark was incompetent. Defendant claimed a contractual right to the funds in the account in the defendant bank by virtue of the account being held as a joint account, with right of survivorship.

Plaintiff sought a temporary restraining order to restrain the defendants from releasing and disposing of the funds in the account. A temporary restraining order was granted after a hearing. Plaintiff also sought to have the funds declared to be the property of his father's estate.

In support of plaintiff's motion for summary judgment, based upon the grounds that there existed no genuine issue of material fact, plaintiff relied upon affidavits filed by him to the effect that at the time of the alleged creation of the joint account, his decedent was senile and incompetent and incapable of handling his affairs, along with depositions of the defendant Brown and two employees of the defendant bank, both of whom were directly or indirectly involved in the transaction by which the defendant Brown's name was added to the decedent's checking account. Defendant filed no countervailing depositions and only one affidavit, that as to the mental capacity of plaintiff's decedent.

 In ruling on motions for summary judgment, both the trial court and this Court must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof would be considered—i.e., we must view all affidavits in the light most favorable to the opponent of the motion, and draw all legitimate conclusions of fact therefrom in that favor. If after so doing a disputed issue of material fact is evident, the motion must be denied. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App.1976), *cert. denied, Id.* (Tenn. 1976).

The affidavits and depositions reveal the following uncontroverted facts: The deceased opened an individual checking account at the First National Bank of Memphis (the predecessor to First Tennessee Bank) in 1960. In connection with the opening of this account, plaintiff's decedent executed two signature cards, one designated a "Tellers Signature Card," and a larger signature card kept on file in the Authorizations Department of the bank. Both cards were captioned, "W.H. Clark" and were signed by him. The reverse side of the larger Authorizations Department sig-

nature card contained the following language:

> This agreement, entered into by and between the undersigned, witnesseth that the account today opened in The First National Bank of Memphis, Memphis, Tennessee, in both of our names is to be held as a joint account with full right of survivorship, and it is understood that this account shall constitute no part of the estate of the one of us who may die first, and that the heirs and distributees shall have no interest therein, but that the whole title thereto shall be vested in the survivor, and the Bank is directed to recognize said survivor as the sole owner thereof and allow the survivor the right of unrestricted withdrawal. Funds on deposit in the account shall be subject to withdrawal on the signature of either one of the undersigned.
>
> Executed at Memphis, Tennessee, on this _____ day of _____, 19____.
> _____
> _____

However, the blanks of this agreement were not filled in; neither was it signed on the reverse side.

In early August, 1981, at the request of the deceased, the defendant Brown accompanied him to the main office of the First Tennessee Bank for the stated purpose of adding the defendant Brown's name to the individual checking account of the deceased. The transaction was handled on behalf of the bank by Miss Michelle Sims, a management trainee. Miss Sims testified in her deposition that the deceased, in the company of Brown, came to her desk, had a seat, and stated that he wanted to "add the name of Jesse Brown" to his account. This was stated in the presence of Brown. She could recollect Mr. Brown saying nothing pertaining to the transaction. After pulling Mr. Clark's original signature card, Miss Sims had both the decedent Clark and the defendant Brown execute two new signature cards—a smaller one to be kept in the branch in which the depositor did business, and a larger one to be kept in the Authorizations Department. At the time Clark

and Brown came into the bank only Mr. Clark was authorized to sign on that particular account. Later, in accordance with Clark's instructions, the computer label showing the style of the account as "W.H. Clark or Jessie Brown" was affixed to the signature card.

There appeared in small print above the signature lines on each of the two cards signed by Clark and Brown the following language:

> By his/their signature(s) hereon depositor(s) acknowledges receipt of the Depositor Agreement and agrees to be bound by the terms thereof as well as any changes or additions hereafter adopted by bank.

Miss Sims testified that on this occasion only the two signature cards referred to above were signed by the parties, and that there was no discussion by her, Brown or Clark about this account becoming a survivorship account. She further testified that at the time of the addition of Brown's signature to the account there was a document in use by the bank labeled "Depositor Agreement," but that inasmuch as this was not a new account, it was not exhibited to either Mr. Clark or Mr. Brown at the time the signature cards were signed, nor was it discussed.

In his deposition, the defendant Brown confirmed that upon the occasion of visiting the defendant bank for the purpose of having his name added to Clark's account, no one said anything about this account being or becoming a survivorship account.

The "Depositor Agreement" referred to in the printed portion of the signature cards read in part as follows:

> This agreement, entered into by and between or among the parties signing the signature card constitutes their agreement that the account(s) opened in the Bank in their names is to be held as a joint account with full right of survivorship, unless otherwise indicated by specific papers or notations hereon, . . .

Defendant Brown confirmed that at the time his name was added to Clark's account neither he nor Clark was furnished with a

copy of the Depositor Agreement; neither was it otherwise mentioned. Brown also testified that several days later he returned to the bank at the request of Clark and advised another bank employee, Mrs. Joyce Smith, to change the address to which monthly statements were sent from Clark's address to his (Brown's) address. This was confirmed by Mrs. Smith in her deposition. She also testified that the only employee of the bank who participated in the signature-adding transaction was Miss Sims.

The defendant Brown relies heavily upon the case of *Lowry v. Lowry,* 541 S.W.2d 128 (Tenn.1976). By virtue of the opinion in the *Lowry* case, our Supreme Court placed Tennessee in the column of states that adhere to the "contract" theory of joint accounts with right of survivorship, as opposed to the "gift" theory. In *Lowry,* the plaintiffs' decedent created two joint checking accounts with one of her sons at two different banking institutions in Knoxville. Both the decedent and her son signed the signature cards at each institution. The proof showed that the funds for each account were taken from a pre-existing joint account between the decedent and her son. The Hamilton Bank signature card provided in part as follows:

> If the undersigned are joint depositors we hereby agree with each other and with the Hamilton National Bank of Knoxville that all sums now on deposit or heretofore or hereafter deposited by either or both of us with said bank to the credit as such joint depositors ... shall be owned by us jointly with the right of survivorship ....

*Id.* at 132.

The other signature card, signed at Home Federal, stated in part as follows:

> ... as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for membership in a savings account in the HOME FEDERAL
> ....

*Id.*

Upon the death of the mother, the other brothers and sisters filed suit in chancery court, asserting that if the accounts were transferred to their brother at all, they were transferred as a gift, and that the defendant brother would be required to show that all the formal requirements of a gift were complied with. Plaintiffs therein asserted that the funds in the two accounts should pass through decedent's will, rather than go to their brother, by virtue of the survivorship language of the signature cards. The Supreme Court rejected the argument that the requirements of a completed gift must be affirmatively proven by the survivor of a joint account before he might claim his rights of survivorship under the terms of a joint account agreement. The court said:

> Absent clear and convincing evidence of contrary intent expressed at the time of its execution, we hold that a *bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended,* (emphasis supplied) creates a joint tenancy enforceable according to its terms; and upon the death of one of the joint tenants, the proceeds pass to the survivor. Here the agreement was plain and unambiguous on its face.

*Id.*

The uncontroverted facts as adduced by the affidavits and the depositions filed in this cause reveal the following:

1. At the time of the creation of this joint account, the creator Clark was 87 years old and suffering from arteriosclerosis.

2. Clark stated to both Brown and the bank official that he only wished to add Brown's name to the account—nothing more. No intent or desire to create a joint account with right of survivorship was expressed by anyone. There was no mention of survivorship rights at the time Brown's name was added to the signature card.

3. The joint account with right of survivorship language on the reverse side of Clark's original signature card was not signed by either party.

4. The legend above the signature card signed by both Clark and Brown referred to a Depositor Agreement, by which all parties agreed to be bound. While this agreement provides that an account with two or more names is to be held as a joint account with right of survivorship, this document was not presented to or read to either Clark or Brown at the time the account was changed, nor is there any proof that a copy of the Depositor Agreement had ever been previously furnished to Clark.

We agree with the application of the principles enunciated in *Lowry*, as set forth in the case of *Strong v. Carter*, 6 T.A.M. 50–8, an unreported opinion of the Eastern Section of our Court, filed October 9, 1981. In that case, the decedent opened an individual checking account in the Green County Bank. Several years later, accompanied by his daughter, decedent went to the bank to change the account. The daughter signed the signature card on the reverse side, under the designation "joint account-payable to either or survivor," and her name was typewritten at the top of the signature card, connected with her father's name by the word "or," presumably inserted by a bank employee. Decedent did not sign the card on the reverse side at the place provided for creating a joint account. The bank treated the account as a joint account. Upon the decedent's death, the daughter withdrew all the funds from the account. The decedent's wife filed suit, claiming that no right of survivorship had been created.

In affirming the decree of the chancellor to the effect that the account was an individual account and not a joint account with a right of survivorship, our brothers in the Eastern Section wrote:

> The *Lowry* case, in effect, creates a rebuttable presumption that one who signs a joint survivorship signature card intends the other party or parties to the agreement be given a present survivorship right in the account. The presumption is rebutted by clear and convincing evidence of a contrary intent at the time of execution or proof of fraud, undue influence, or overreaching. *See Iacometti* [*v. Frassinelli*, 494 S.W.2d 496 (Tenn. App.1973)], *supra*.

The absence of decedent's signature under the joint account designation denies the daughter the benefit of the *Lowry* presumption. Under these circumstances, it was the daughter's burden to prove decedent's intent to create a joint account with right of survivorship by clear and convincing evidence since the account was initially established as an individual account. See *Jones v. Jones*, 185 Tenn. 586, 206 S.W.2d 801 (1947); *McLeroy v. McLeroy, et al.*, 163 Tenn. 124, 40 S.W.2d 1027 (1931). For a case conceptually similar and employing the rationale followed herein, see *Ison v. Ison*, 410 S.W.2d 65 (Mo.1967).

Clearly, the facts in the case at bar do not remotely resemble the facts in *Lowry*, but are more in line with the facts in *Strong v. Carter*. Accordingly, we cannot hold that defendant Brown is entitled to the presumption provided by *Lowry*. Without this presumption and the facts justifying it, Brown's claim to the account must fail.

We are of the opinion that a genuine issue as to the material fact—that is, the creation of a joint account with a right of survivorship has not been established, and therefore we affirm the chancellor.

The costs in this cause are taxed to the defendant, for which execution may issue, if necessary.

CRAWFORD and HIGHERS, JJ., concur.