190

Sylvia S. Sadow, Appellant,

*v.*

Joel W. Solomon et al, Appellees.

(*Knoxville,* September Term, 1958.)

Opinion filed December 12, 1958.

NOONE & NOONE, Chattanooga, for appellant.

WILKERSON & ABSHIRE, Chattanooga, for appellees.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This suit was filed by complainant to have construed the will of her father, Abraham Solomon, who died on February 15, 1958. The defendant filed a demurrer which was sustained by the Chancellor and thus the appeal comes direct to this Court.

A copy of the will is attached to the bill but only a part of Item V(a) and Item VI are pertinent to this inquiry.

"Item V.

"I give, devise and bequeath to my son, Joel W. Solomon, the following items of personal and real property, same to be his in fee simple:

"(a) All stock owned by me at the time of my death in Independent Theatres, Inc. and Independent Realty Corporation, both being Tennessee corporations and in Independent Theatres of Georgia, Inc., and Independent Concessions of Georgia, Inc., the latter two corporations being corporations organized and existing under the laws of the State of Georgia."

"All the rest, residue and remainder of my property and estate of every kind, nature and description, wheresoever situated and whether now owned or hereafter acquired by me, including the proceeds of any policy or policies of insurance on my life payable to my estate (the proceeds of all such policies to become part of my general estate for all purposes, including the payment of debts, expenses, costs and taxes and for the purposes of distribution) I direct that my executors allocate, apportion and divide into two separate and equal parts or shares, one such share for my son Joel W. Solomon, and one for my daughter, Slyvia S. Sadow. The share thus allocated, apportioned and set aside for my said son shall be distributed to him in fee simple. The share of my said daughter, however, shall be held in trust for her primary use and benefit in accordance with the provisions of Item VII below."

The bill alleges the following:

1. Testator executed his will on January 9, 1957, at which time he owned shares of stock in a corporation named "Independent Theatres, Incorporated", at which time he well knew that he owned no shares of stock in any

corporation then in existence in Tennessee bearing the name "Independent Theatres, Inc."

2. Testator at that time, however, knew that there had been such a corporation as "Independent Theatres, Inc." in existence in Tennessee between July 30, 1946, and April 30, 1952, on which latter date said corporation ceased to exist.

3. Testator at the date of making his will knew that there was in existence a Tennessee Corporation from April 30, 1952, and February 28, 1957, named "Independent Theatres, Incorporated", in which testator owned shares of stock and served in a managerial capacity.

4. About February 28, 1957, nearly two months after testator executed his will, there came into existence a Tennessee corporation named "Independent Theatres, Inc." This fact was known to testator prior to his death on February 15, 1958.

5. Between the date of the execution of his will and the date of his death testator made no changes in or additions to his will so far as known to petitioner.

The demurrer is on the sole ground that the bill shows on its face that testator bequeathed all stock owned by him at the time of his death in "Independent Theatres, Inc." to his son, Joel W. Solomon.

It is, therefore, insisted by complainant that at the time her father executed his will on January 9, 1957, since there was no Tennessee corporation in existence known as "Independent Theatres, Inc.", he could not have intended to give his said son stock that he did not own in a corporation not yet created. It is, therefore, insisted that said stock which her father did own at the

time of his death in "Independent Theatres, Inc." should fall under the residuary clause in Item VI and be equally divided between complainant and her brother, Joel W. Solomon.

Much emphasis is placed by appellant upon the phrase "both *being* Tennessee corporations", by reason of which expression it is insisted that testator intended to bequeath to said son all of the stock which he owned at the date of execution of the will in an already existing Tennessee corporation; therefore, what he really intended was to refer to the "Independent Theatres, Incorporated" rather than to "Independent Theatres, Inc.", which, of course, could very easily be a confusion of terms.

This argument, however, we think overlooks the more pertinent language which precedes this descriptive part and is "all stock owned by me *at the time of my death* in 'Independent Theatres, Inc.' "

T.C.A. sec. 32-301 controls the present situation and reads as follows:

"Operation of will.—A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words and context."

Under this statute, all property whether real or personal, and whether acquired before or subsequent to the execution of the will, passes unless a contrary intention appears from the will itself. See annotations under

Code section as well as Phillips Pritchard Wills and Estates, secs. 26, 28 and 152.

In Page on Wills (Lifetime Ed.), sec. 205, vol. 1, p. 420, it is stated:

"The earlier English law, and, subsequently, the ecclesiastical law, recognized the power of the owner of personalty to dispose of his interests therein by testament, without any reference to his ownership on such property when the testament was made. This rule has persisted in the law of testament; and, in the absence of a statute, a testator may dispose of personal property which he owns at the time of his death, even though such testament was executed before he became the owner thereof. Property which is not in existence when the testament is made, may be bequeathed."

■ Of course, a testator can not dispose of property which he does not own at the time of his death, but if the 'property, real or personal, be adequately described, there is no reason why a testator, under our statute *supra,* can not dispose of property he did not own at the date of the execution of the will but did own at the time of his death unless there appears an intention to the contrary.

■■ We are unable to find any ambiguity in the language of sec. V(a) where it is specified that the stock bequeathed is stock owned at the death of the testator in "Independent Theatres, Inc." being a Tennessee corporation. Such stock in such corporation was in existence at the date of death of the testator. It is only where there is a latent ambiguity as to the person or property intended that parole evidence is admissible to resolve that ambiguity. See Phillips Pritchard, *supra,* sec. 406; although in the event of doubtful language, parole evidence is admis-

sible to show the surrounding circumstances of a testator at the time of the execution of the will in order to aid in determining the meaning of the language used. Phillips Pritchard, *supra,* sec. 409, and authorities cited. We have no such situation here, however, because the testator has forestalled any doubt as to his meaning by the use of apt language that correctly describes the stock which he owned at the time of his death.

We have not deemed it necessary to refer to a number of cases discussed in the briefs for the reason that none of them is quite analogous on the facts and the general rules of law are rather well established, the application of same being always the problem, if any.

We, therefore, affirm the decree below and remand the cause for any further proceedings in connection therewith, with costs against the appellant.