**Fesington LOWRY, Jr., Petitioner,**

v.

**William LOWRY et al., Respondents.**

Supreme Court of Tennessee.

July 26, 1976.

Robert M. Child, Knoxville, for petitioner.

Earl S. Ailor, Asquith, Ailor & Jones, Knoxville, for respondents.

## OPINION

FONES, Justice.

Petitioner in this case is the son of the decedent and held with her two (2) joint savings accounts totalling approximately $28,000. The question presented is whether those funds should be transferred to him under the right of survivorship provision of the joint accounts, or whether the funds should be divided equally among the decedent's five (5) children under her will.

Respondents, William Lowry and his three (3) sisters, filed suit in the Chancery Court of Knox County against their brother, Fesington Lowry, petitioner, who was

named executor in the will of their deceased mother. Their contention in the Trial Court was that the assets of two (2) accounts owned jointly by petitioner and his mother, with rights of survivorship, should pass through the estate of Mrs. Lowry according to the terms of her will. The Trial Court found that the language used in creating the joint accounts controlled, and that the survivorship provisions were effective to pass title to petitioner at his mother's death.

The Court of Appeals reversed, holding that the burden was upon petitioner to affirmatively show that the funds in the accounts were intended as a gift; and that absent such a showing he could not rely upon the language used in creating the joint tenancy. We reverse the Court of Appeals and reinstate the judgment of the Trial Court.

Mrs. Lowry was widowed in 1962 and managed all of her own affairs until her eyesight started failing her; and petitioner, eldest of her five (5) children, began assisting her. She was very active and interested in the management of her financial assets. As her eyesight worsened, decedent depended more and more upon petitioner to handle her financial affairs. However, a concurrent finding of facts by the Trial Court and the Court of Appeals has established that decedent maintained an alert mind until her death; that there existed no confidential relationship between petitioner and his mother; and that there was no fraud practiced by petitioner which would allow him to take financial advantage of his mother.

Decedent was completely independent and lived by herself until 1968 when she moved to a retirement home because of failing eyesight.

The two (2) savings accounts in question were established by decedent without any suggestion or encouragement from petitioner. She opened these accounts in order to reinvest existing funds to realize a higher interest yield, and petitioner's only participation was the signing of the signature cards.

The first account was opened at Hamilton National Bank in September, 1969, and totaled approximately $10,000 at death. The second account was opened in November, 1971, at Home Federal Savings and Loan Association and totaled approximately $18,000 at death.

Between the opening of these accounts, decedent made out her will in which she left her estate to her five (5) children in equal shares. No mention was made in the will of the joint accounts. Petitioner was named executor of the estate, and in that position he took action to transfer the assets of the joint accounts into his own name and divided the remainder of the estate—approximately $50,000—into five (5) equal portions for distribution to the children.

Respondents rely upon the theory that if the accounts were transferred to petitioner at all, they were transferred as a gift; and petitioner must affirmatively show that all of the formal requirements of a gift were complied with. That is, there must have been an intention to make a present gift coupled with delivery by which complete dominion and control of the property was surrendered by the donor. While we accept this as a proper statement of the law of gifts, *Brown v. Vinson,* 188 Tenn. 120, 216 S.W.2d 748 (1949), we reject the argument that these requirements must be affirmatively proven by the survivor of a joint account in order that he may exercise his rights of survivorship under the terms of the agreement.

Although some jurisdictions have adopted the "gift" theory, see for example *Trenton Sav. Fund Soc. v. Brynes,* 110 N.J.Eq. 617, 160 A. 831 (1932), we feel the better reasoned approach utilizes the "contract" theory. See for example *Agrelius v. Mohesky,* 208 Kan. 790, 494 P.2d 1095 (1972). Additionally, although there is no case directly in point, the decisions of the appellate courts of this State indicate a propensity toward the contract theory.

Of primary importance is the case of *Melhorn v. Melhorn,* 208 Tenn. 678, 348 S.W.2d 319 (1961). There, John Melhorn opened a

joint account with Lee Melhorn, the defendant. Lee, exercising his right of survivorship at John's death, took control of the $2,500 account, to which he had contributed only $600. This action resulted in a lawsuit brought by the administratrix of John's estate. Although the opinion contains no clearly expressed rule of law which would dispose of the case at bar, the Court looked to the intention of the parties as expressed by the joint signature card and the testimony of the bank officers, and made it clear that it considered the joint account a contractual undertaking. It noted that although common law joint tenancy with right of survivorship, had been abolished by T.C.A. § 64–107, it could still be created by contract. The contract as expressed on the signature card in that case is quoted by the Court in *Melhorn* as follows:

" 'Joint Account

'John or Lee Melhorn

'The undersigned joint depositors hereby agree each with the other and with the First National Bank in Harriman, Tennessee, that all sums now on deposit or heretofore or hereafter deposited by either or both of said joint depositors with said bank to their credit as such joint depositors with all accumulations thereon, are and shall be owned by them jointly, WITH RIGHT OF SURVIVORSHIP, and be subject to the check or receipt of either of them or the survivor of them * * *.' " 208 Tenn. at 681, 348 S.W.2d at 320.

The court supported its conclusion with two (2) prior cases which relied on the contract theory: *Sloan v. Jones,* 192 Tenn. 400, 241 S.W.2d 506 (1951) and *Peoples Bank v. Baxter,* 41 Tenn.App. 710, 298 S.W.2d 732 (1957).

In *Sloan* the husband opened the joint account in the name of "Joe Tatum or Wife," and both he and his wife moved to Alabama where he predeceased his wife. The Court, in applying Tennessee Law, held that the account created a tenancy by the entirety, the proceeds of which passed to the wife immediately upon the death of the husband.

In *Peoples Bank v. Baxter, supra,* Mrs. Baxter made out a certificate of deposit payable to her own order or, upon her death, to her daughter, Mrs. W. A. Nippers. At Mrs. Baxter's death, the bank filed a bill of interpleader. The Court of Appeals agreed with the parties that the proceeds did not constitute a gift inter vivos or causa mortis, nor a testamentary disposition. The Court sustained the claim of Mrs. Nippers on the contract theory of donee third party beneficiary.

The most recent Tennessee case relevant to the issue is *Iacometti v. Frassinelli,* 494 S.W.2d 496 (Tenn.App.1973), in which the decedent died intestate with a joint survivorship account in existence. The question presented in that case was identical to the one presented in the case at bar: whether the funds passed at death to the survivor, or to the estate. The Court of Appeals rejected the idea that the survivor of a joint account with survivorship rights was required to go forward beyond the written agreement and affirmatively show by other proof that the funds placed in the account were intended as a gift. The Court stated that absent a finding of fraud, undue influence, or overreaching: " . . . the written agreement signed by the deceased speaks just as loudly and clearly as if the deceased herself took the stand and orally expressed the words written on the paper." *Id.* at 500.

Although all of the Tennessee cases cited above can in some measure be distinguished from the case at bar, considered cumulatively they support the proposition that a joint account agreement with rights of survivorship establishes a contract which transfers the account proceeds at death by operation of law. Thus, a will disposing of the estate does so without regard to the assets of the joint survivorship account; that is, only that property owned at death passed by will. 1 Pritchard, Law of Wills and Estates, § 28, (2d ed. Phillips 1955); T.C.A. § 32–301; *Sadow v. Solomon,* 204 Tenn. 190, 319 S.W.2d 83, 85 (1958), and it is clear that joint survivorship funds are not owned by the decedent at death:

"The right of survivorship may be created in a joint bank account . . . in which event the proceeds pass to the survivor by operation of law and do not become a part of the assets of the estate in the hands of the personal representative of the decedent." 2 Pritchard, *supra,* § 621.

Absent clear and convincing evidence of contrary intent expressed at the time of its execution, we hold that a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms; and upon the death of one of the joint tenants, the proceeds pass to the survivor. Here the agreement was plain and unambiguous on its face. The Hamilton Bank signature card provided:

"If the undersigned are joint depositors we hereby agree with each other and with the Hamilton National Bank of Knoxville that all sums now on deposit or heretofore or hereafter deposited by either or both of us with said bank to the credit as such joint depositors with all accumulations thereon are and shall be owned by us jointly with the right of survivorship and be subject to the order of receipt of either of us or the survivor of us . . . ."

The Home Federal signature card stated: " . . . as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for membership and a savings account in the HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF KNOXVILLE and for issuance of evidence thereof in their joint names described as aforesaid."

Mrs. Evelyn Baker, manager of the West Knoxville Branch of Hamilton Bank testified that she opened the joint account for decedent in 1969, and that the funds for that account were taken from a pre-existing joint account between decedent and petitioner. The reason for the change was to reinvest and receive a higher rate of interest. Mrs. Baker testified that she remembered the transaction; and when asked if she had discussed the right of survivorship with Mrs. Lowry, she replied that, "Mrs. Lowry knew what she had, she knew that she wanted them exactly the way she had them before." (Referring to the prior joint accounts with right of survivorship.) Mrs. Baker testified that decedent also had a checking account at the bank and that petitioner was authorized to draw funds on it, but that he did not have a right of survivorship in the account.

The officer who opened the Home Federal account did not remember the particular transaction but testified that after talking with the customer it is determined whether to have the account in a joint form. Additionally, the proof shows that the funds placed in the account in question were withdrawn from an account in another bank which petitioner and his mother also held jointly.

Respondents rely on their mother's will, in which she divided everything equally between her children, to show that she did not intend to benefit one over the other. This will, however, was couched in general terms and did not evidence any specific intent on the part of the testatrix to include the joint accounts in the probate estate.

Respondents also rely on a letter from their mother written to all of her children approximately three (3) weeks before her death. The letter stated in part:

"My last will and testament is located in Fes's [petitioner] safety deposit box. My U. S. Treasury Notes and bank books are also in this box in an envelope marked 'Property of Mrs. F. C. Lowry, Sr.' Nothing else in the box belongs to me."

They maintain that this letter shows that decedent had not relinquished dominion and control over the bank books in question. As we analyze the question in terms of contract law, the relinquishment of dominion and control of the bank books is irrelevant.

In view of Mrs. Lowry's financial awareness, and her transactions at several banks, including the opening and closing of several

different accounts, both joint and non-joint, prior to the opening of the accounts in question, it would be presumptuous to say that she was not familiar with the legal aspects of joint tenancy. *Agrelius v. Mohesky, supra.*

The establishment of a joint bank account creating a joint tenancy with right of survivorship in clear and unambiguous language is subject to the parol evidence rule and is generally immune from attack in the absence of fraud, misrepresentation, duress, undue influence, mutual mistake, and incapacity. Although none of these defenses was specifically pleaded, the Chancellor found that there had been no undue influence or fraud practiced by petitioner, and this finding was concurred in by the Court of Appeals.

Respondents have not met the burden of showing by clear and convincing evidence that the agreements as expressed in writing on the signature cards did not reflect the true intention of the parties at the time of execution.

The decision of the Court of Appeals is reversed and that of the Trial Court reinstated with respondents to pay the costs.

COOPER, C. J., and HENRY, BROCK and HARBISON, JJ., concur.