In re the ESTATE OF Heman F. ROARK.

L.J. ROARK, et al., Petitioners–Appellees,

v.

Paul BISCHOFF, et al., Respondents–Appellants.

Court of Appeals of Tennessee, Eastern Section.

Nov. 4, 1991.

Permission to Appeal Denied by Supreme Court March 9, 1992.

James F. Logan, Jr., Logan, Shockey, Miller & Bilbo, Robert L. McMurray, Bell and Associates, Cleveland, for Paul Bischoff, former executor, and pro se.

Harry Berke, Berke, Berke & Berke, Chattanooga, for L.J. Roark, et al.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

This litigation is the outgrowth of Respondent–Appellant Paul Bischoff's having qualified as executor of the will of Heman Roark, deceased, and claiming the proceeds of a certificate of deposit on which he was named with Heman Roark as joint tenants with the right of survivorship.

Mr. Heman F. Roark died testate in Hamilton County in August, 1989. He was 92 years of age and his surviving next of kin were 22 nephews and nieces. He made his will in 1980. At that time he had one sister, Emma Roark, and one brother, Dewey Roark, who were living. As pertinent here, his will provided:

*"Emma Roark:* I have certificates of deposit and other financial accounts in my name jointly with my sister, Emma. I understand she will succeed to the ownership of these by virtue of the contract upon my death if she survives me. If the contract

does not provide for her succession to ownership to these certificates of deposits and accounts, I give them to her.

"*Dewey Roark:* I give all of my remaining personal property, whether tangible or intangible, to my brother, Dewey. This includes all of the certificates of deposit, and financial accounts that I own jointly with my sister, Emma, if she does not survive me."

His will provided that if Emma and Dewey should predecease him, then the items in the bequest should pass to his residuary estate and the 22 nephews and nieces were the beneficiaries of the residuary estate. He named Respondent Paul Bischoff as executor of his will and Darwin Lane, the husband of one of his nieces, as substitute executor.

Dewey predeceased both Heman and Emma, and Emma died early in November, 1987. Heman's health began failing in 1986 and Emma had a rather prolonged illness prior to her death. Emma and Heman had a very close relationship and prior to her death Emma made her home with Heman. Heman and Paul Bischoff had a long and enduring friendship for over 50 years. Heman's health problems included facial cancer and anemia which, in turn, required considerable hospitalization and blood transfusions. During the last three years of his life he lost a good deal of weight and became physically feeble but he never lost any of his mental alertness.

He did not drive a car and frequently called upon his friend, Mr. Bischoff, to take him to places he needed to go. This included trips to the bank to transact business, trips to Atlanta, Georgia, for surgery, and trips to the hospital in Cleveland. On the morning of December 4, 1987, Mr. Roark called Mr. Bischoff and told him he needed to go to the Cherokee Valley Federal Bank to renew a certificate of deposit. The record indicates there were four certificates which were in the names of Heman or Emma Roark to be renewed. When they got to the bank, Mr. Roark told the service officer of the bank, Ms. Leslie Nelson, "I want to put him, Paul Bischoff, on the certificate with me, me or him, and

where he—if he outlives me, I want him to get the certificate." Ms. Nelson prepared a certificate, filled in the names "Roark, Heman, or Bischoff, Paul," and the certificate provided "as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety." Mr. Roark and Mr. Bischoff both signed the certificate, which was in excess of $214,000.

After Mr. Roark's death the will was admitted to probate in the Chancery Court of Hamilton County and Mr. Bischoff was duly qualified as executor. Part of the estate which passed to the beneficiaries under the residuary clause of the will was a very valuable farm of approximately 175 acres. Since each of the beneficiaries of the will received a small portion of the real estate, they desired to sell it as a whole. Although the real estate passed directly to the beneficiaries and not through the executor, the beneficiaries asked Mr. Bischoff to handle the sale of the land for them. Because of the value of the farm, considerable effort was involved in negotiating a sale. Bids were advertised for the farm and the high bid initially received was $425,000. In searching the title to the property, however, complications were encountered in that the total acreage in the farm was not vested in Heman. Part of the land was titled in Emma's name and part in Dewey's name. It required close cooperation of all the beneficiaries of the will to resolve these problems. Because of the delay in resolving the title problems, the high bidder withdrew his bid. Later, however, Mr. Bischoff negotiated a sale of the property for $450,000.

In the interim, Mr. Bischoff consulted the law firm of Bell and Associates, which had been retained by the executor to represent the estate, about the legal ownership of the certificate of deposit (CD) in the joint names of him and Mr. Roark. Mr. McMurray, attorney with the law firm, advised Mr. Bischoff that, since the CD was in their joint names with the right of survivorship, it was his opinion the proceeds of the CD belonged to him, Mr. Bischoff, and did not pass to the estate.

In September, 1990, Mr. McMurray, who was handling the estate matters for the law firm, wrote a letter to all of the beneficiaries of the estate and furnished them with an accounting of the estate which showed all assets, income and disbursements of the estate. He also informed them that as soon as tax clearance was received from the Internal Revenue Service and the State of Tennessee, the estate would be closed and remaining assets of the estate would be disbursed. As pertinent here, his letter also stated:

"The accounting does *not* include a certificate of deposit in the sum of $214,668.46 which was held in the name of Heman F. Roark and Paul A. Bischoff as joint tenants with right of survivorship. Attached is a copy of the signature card creating the joint account.

"Under the law of the State of Tennessee a joint account with right of survivorship passes to the surviving account holder. In our opinion Mr. Roark's joint account is not part of the probate estate to be distributed under the Will of the Heman F. Roark. We rely on the following cases in rendering this opinion:

 *Edwards v. Edwards,* 713 S.W.2d 642 (Tenn.1986)

 *Lacometti [Iacometti] v. Frassinelli,* 494 S.W.2d 496 (Tenn.App.1973)

 *Lowry v. Lowry,* 541 S.W.2d 128 (Tenn.1976)

 *Summers [Simmons] v. Foster,* 622 S.W.2d 838 (Tenn.App.1981)

 *White v. Watson,* 571 S.W.2d 493 (Tenn.App.1978)

"Mr. Roark understood the legal significance of a joint account with right of survivorship as evidenced by § 4.1 of his Will which reads in part as follows:

"'I have certificates of deposit and other financial accounts in my name jointly with my sister, Emma. I understand she will succeed to the ownership of these by virtue of the contract upon my death if she survives me.'

"Our opinion does not bind the heirs. Each heir is entitled to obtain, and act upon, independent legal advice on this issue. We suggest that you forward a copy of this letter to your attorney if you wish to obtain independent legal advice."

Soon after receipt of the letter, all of the beneficiaries of the will except Lela Bischoff, wife of Mr. Bischoff, filed a petition asking that Mr. Bischoff be removed as executor and the court declare the CD belonged to the estate and not to Mr. Bischoff. The petition failed to state any theory upon which the court should find the CD should go to the estate rather than to Mr. Bischoff. It alleges: "The said Paul Bischoff has no interest in the funds, and no part of the funds deposited in the certificate of deposit belonged to Paul Bischoff.... [T]he certificate of deposit consisted of funds belonging solely and alone to the testator, Heman F. Roark...." The petition does not allege malfeasance or misfeasance of Mr. Bischoff as executor other than that his claiming the funds in the CD "has created a conflict of interest and a turmoil between the heirs of the Estate and the Executor; and it would not be to the best interests of the Estate that he be allowed to continue to serve in behalf of the heirs of the Estate."

Mr. Bischoff, for answer, denied it would be in the best interest of the estate for him to be removed as executor. He denied there was a conflict of interest by his claiming the CD since the CD did not pass under the will, but went directly to him. As an affirmative defense, he relied upon T.C.A. § 45–3–508 which, as pertinent here, provides:

 **Accounts in two or more names.**—(a) When a deposit account is maintained in any association in the name of two (2) or more persons, whether minor or adult, in such form that the moneys in the account are payable to either of the survivor or survivors, then such account and all additions thereto shall be the property of such persons as joint tenants.

Upon the trial of the case the court found the issues in favor of the beneficiaries of the will. He found it was the intent of Mr. Roark that the money in the CD be used for his care during his lifetime and upon his death the proceeds should go to the estate. In his memorandum opinion,

the court said: "[T]he court concludes that there was an intent to establish a trust in the proceeds of the certificate of deposit and the court will impose such a trust from the proceeds of deposit for the benefit of the estate." The court did not address, in his memorandum opinion, the issue of removing Mr. Bischoff as executor. In the final decree, the court said: "[T]he Court concluded that to allow the defendant to remain as Executor would place the Executor in a hostile position with respect to the heirs named in the will; and that it would be in the best interest of the Estate that Darwin Lane, who was named as Alternate Executor under the will of Heman F. Roark, be appointed as Executor of the Estate of Heman F. Roark." The decree also provided Mr. Bischoff should file a full accounting of the estate with the court and submit an application for fees for services and claims against the estate. The decree reserved for further consideration claims for attorneys' fees for services rendered the estate.

A complete accounting of the estate was filed which showed a gross estate for federal estate tax purposes of $695,542. Mr. Bischoff also filed a claim for $25,000 for services rendered to the estate as personal representative and for services connected with the sale of the real estate. He also asked to be reimbursed for mileage of 3,440 miles at 25 cents per mile in the total sum of $860.

Bell and Associates filed an application for attorneys' fees of $9,000 plus expenses of $335.97 in connection with services rendered to the estate. An itemized time sheet showed a total of 159 hours spent on work for the estate.

Darwin Lane, successor executor, filed a motion asking the court to set a hearing to determine whether or not Mr. Bischoff was entitled to an executor's fee and whether or not Robert McMurray, attorney, (Bell and Associates) was entitled to attorneys' fees for representing Mr. Bischoff and the estate. A hearing was set but the court did not hear any proof; he heard only argument of counsel. However, he denied all fees and expenses of both Mr. Bischoff

as executor and Mr. McMurry as attorney (Bell and Associates) for the estate.

Mr. Bischoff appeals personally from the decree imposing a resulting trust on the CD for the benefit of the estate. He also appeals as executor of the estate from the decree removing him as executor and denying him fees and expenses as executor. Mr. McMurray (Bell and Associates) appeals from the decree denying attorneys' fees and expenses. We reverse for the reasons hereinafter stated.

We first consider the chancellor's holding that a constructive trust had been created on the proceeds of the CD for the benefit of the estate. A resulting trust is defined as follows:

Broadly speaking, a resulting trust arises from the nature of circumstances of consideration involved in a transaction whereby one person thereby becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and although there is an absence of fraud or constructive fraud.

76 Am.Jur.2d, Trusts, § 196, p. 429 (1975).

A resulting trust may be proved by parol evidence. "[I]t is uniformly held that resulting trusts may be, and generally are, proved by parol evidence." *Chappell v. Dawson*, 202 Tenn. 672, 308 S.W.2d 420, 422 (1957). However, it is uniformly held that any oral statement purporting to create a resulting trust in property must have been made prior to or contemporaneously with the transaction.

In the case of *King v. Warren*, 680 S.W.2d 459 (Tenn.1984) the court, in addressing the requisites of creating an oral resulting trust such as the one in the case at bar, said:

We recently had occasion to discuss the law with respect to the establishment of an oral trust in real estate, affirming the requisites that the declaration must be made prior to or contemporaneous

with a transfer of realty, must be proven by evidence that is clear, cogent and convincing, and that ordinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by that quantum of proof. *Tansil v. Tansil,* 673 S.W.2d 131 (Tenn.1984); citing *e.g., Sanderson v. Milligan,* 585 S.W.2d 573 (Tenn.1979) and *Hunt v. Hunt,* 169 Tenn. 1, 80 S.W.2d 666 (1935).

680 S.W.2d at 461.

In *Linder v. Little,* 490 S.W.2d 717 (Tenn.App.1972) the court, in addressing the creation of an oral trust, said:

> [T]he declaration of trust by the grantor must be before or contemporaneous with the conveyance. *Adrian v. Brown,* 29 Tenn.App. 236, 196 S.W.2d 118 (1946).
>
> And, proof of a parol trust must be of the clearest and most convincing character. It must be so clear, cogent and convincing as to overcome the opposing evidence coupled with the presumption that obtains in favor of the written instrument. *Hoffner v. Hoffner,* 32 Tenn. App. 98, 221 S.W.2d 907 (1949) and authorities cited therein.

490 S.W.2d at 723.

"The doctrine of resulting trust in all of its phases applies alike to personal and to real property." 89 C.J.S. Trust § 98 p. 941 (1955). *Also see Estate of Wardell ex rel. Wardell v. Dailey,* 674 S.W.2d 293, 295 and 23 A.L.R. p. 1500.

The case of *Lowry v. Lowry,* 541 S.W.2d 128 (Tenn.1976) is the landmark case in this jurisdiction establishing the concrete rule that where funds are held as joint tenants with the right of survivor, upon the death of the original owner of the funds the funds pass to the survivor and not under the will of the deceased "absent clear and convincing evidence of *contrary intent expressed at the time of execution....*" (Emphasis ours.) The facts in the *Lowry* case are very similar to the facts in the case at bar. Mrs. Lowry had five children. She was elderly, with failing eyesight. Her oldest son helped her with financial matters. His name was placed on two certificates of deposit of Mrs. Lowry's as joint tenants with right of survivorship. Mrs.

Lowry made it known to her children shortly before her death that she had a will and she was leaving her estate to them in equal shares. She did not mention the certificates of deposit specifically in her will. Upon Mrs. Lowry's death, the oldest son qualified as executor of her estate. He appropriated the funds in the certificates of deposit to his own use and divided the remainder into five equal parts. The court of appeals held the funds of the certificates of deposit should have gone to the estate. The supreme court reversed. In doing so, it settled what had formerly been indecisive holdings on the issue. As pertinent here, the court said:

> Although all of the Tennessee cases cited above can in some measure be distinguished from the case at bar, considered cumulatively they support the proposition that a joint account agreement with rights of survivorship establishes a contract which transfers the account proceeds at death by operation of law. Thus, a will disposing of the estate does so without regard to the assets of the joint survivorship account; that is, only that property owned at death passed by will. 1 Pritchard, Law of Wills and Estates, § 28 (2d ed. Phillips 1955); T.C.A. § 32–301; *Sadow v. Solomon,* 204 Tenn. 190, 319 S.W.2d 83, 85 (1958), and it is clear that joint survivorship funds are not owned by the decedent at death:
>
> > "The right of survivorship may be created in a joint bank account.... in which event the proceeds pass to the survivor by operation of law and do not become a part of the assets of the estate in the hands of the personal representative of the decedent." 2 Pritchard, *supra,* § 621.
>
> Absent clear and convincing evidence of contrary intent expressed at the time of its execution, we hold that a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms; and

upon the death of one of the joint tenants, the proceeds pass to the survivor. 541 S.W.2d at 131, 132.

The CD here in issue is clear and unambiguous. It provides: "Roark, Herman, or Bischoff, Paul, as joint tenants with the right of survivorship and not as tenants in common, and not as tenants by the entirety." Also, the record is devoid of any *"contrary intent expressed at the time of its execution."* (Emphasis ours.) On the contrary, there is undisputed evidence showing that at the time the CD was issued Mr. Roark requested that Mr. Bischoff be made a joint tenant with the right of survivorship. Ms. Leslie Nelson testified she was employed by Cherokee Valley Bank, as customer service representative, in December, 1987, when the CD here involved was issued. Her job as service representative involved opening checking accounts, savings accounts, CDs, IRAs and money markets. She testified she prepared the CD in question. She placed the names of Mr. Roark and Mr. Bischoff on the CD at the request of Mr. Roark but, before doing so, she questioned Mr. Roark to be sure this was the way he wanted the CD prepared. A portion of her testimony was as follows:

"Q. In order for you to make sure that you understood what he wanted to do?

"A. Right, I always wanted to make sure.

"Q. Right. And the way that this is set up as a joint tenant with right of survivorship, did you discuss with Mr. Roark what that meant to see if you understood what he wanted to do?

"A. Uh-huh. What I asked him was did he want him to be the beneficiary of this account.

"Q. All right, okay.

"A. But that was not any different than I would have done with anyone.

"Q. And what was his response with reference to that?

"A. Yes, he wanted to add him and to have the right of survivorship."

This testimony of Ms. Nelson's is undisputed in the record. It was apparently overlooked by the chancellor because he did not mention it in his determination of the case.

It appears from the chancellor's memorandum opinion that he placed great weight on the testimony of Mr. Darwin Lane. Mr. Lane is the husband of one of the beneficiaries of the will and was named in the will as an alternate executor to Mr. Bischoff. Mr. Lane's testimony shows he had been a close friend of Mr. Roark's for many years. He visited Mr. Roark in his home frequently. He did many things to help Mr. Roark, things similar in nature to what Mr. Bischoff did. He testified, over the objection of counsel for Mr. Bischoff, to a conversation with Mr. Roark relating to the CD here in issue. He testified he was visiting Mr. Roark in his home in April, 1989, and Mr. Roark requested him to check on his CDs, which he had in a metal box, to ascertain what the renewal dates were. In doing so, Mr. Lane observed Mr. Bischoff's name was on the CD with Cherokee Valley Bank. He said he questioned Mr. Roark about it as follows:

"I said, 'You have Paul's name on this then for monies to help attend and take care of you?'

"He said, 'That's right.'

"I said, 'Well, what happens with the rest of the money?'

"He said, 'Well, it goes into my estate, like everything else.'

"And I said, 'Do you feel comfortable with that?'

"And his response, as he characteristically said, 'Paul's honest. He's all right,' and that was his response to that."

The Appellant insists in his brief it was error for the court to overrule his objection to this testimony on the grounds it was self-serving hearsay. If it was error, however, to admit the testimony into evidence, it was harmless since the statements were not made at the time the CD was executed. Had Mr. Roark told Ms. Nelson at the time the CD was executed that he was putting Mr. Bischoff's name on the certificate only for convenience in case it was needed to take care of him, that Mr. Bischoff was not to receive the funds if he survived Mr. Roark, and any remaining funds were to go into his estate, we would be inclined to affirm the holding of the chancellor; but

there is not a scintilla of evidence in the record to this effect. The uncontradicted testimony was to the contrary. We, accordingly, must reverse.

 We now consider together the issues presented relating to removing Mr. Bischoff as executor, denying him compensation for his services, and the denial of attorneys' fees and expenses. The fact that we have found Mr. Bischoff, instead of the estate, to be the lawful owner of the CD places each of these issues in a different posture before the court than would have been the case had the appropriation of these funds by Mr. Bischoff to himself been without legal right. Mr. Bischoff and Mr. McMurray (Bell and Associates) are entitled to the same relief and consideration by the court as they would be if this litigation had never arisen. Mr. Bischoff is entitled to be reinstated as executor of the estate. There was no proof in the record he had failed in any respect to perform his duties honestly and efficiently. In removing him, the court said, "[T]o remain as Executor would place the Executor in a hostile position with respect to the heirs named in the will...." Any reason for hostility should now be removed. "[I]n the case of an executor or co-executor, animosity between a personal representative and one or more distributees, without any showing of an adverse effect on the estate or the rights of a distributee, is not grounds for removing one in whom the testator placed trust and confidence." 31 Am.Jur.2d Executors and Administrators § 286 p. 159.

Mr. Bischoff is also entitled to compensation for his services as executor for the estate. In denying him compensation, the court said Mr. Bischoff's claim to the CD was "contrary to the best interest of the estate." The court also faulted him for not informing the beneficiaries of the will of his claim to the CD until after the sale of the real estate. The court also said: "The Court accordingly would hold that Mr. Bischoff is not entitled to recover fees for his services as executor, and in doing so the Court considers that the services he rendered with regard to the sale of the real

estate were not a part of his duties; and secondly, that he had a claim to proceeds of the certificate of deposit adverse to the best interests of the estate and adverse to the benefit of the estate." Since Mr. Bischoff was rightfully claiming only that which was legally his, what appeared to be adverse to the best interests of the estate is no longer valid. T.C.A. §§ 30-2-606 and 317 make it clear that the personal representative of an estate is entitled to reasonable compensation. While the chancellor was correct in holding the sale of the real estate was not his duty as executor, the record shows the beneficiaries of the will asked Mr. Bischoff to handle the sale of the property for them and it appears from the record that he made a very profitable sale of the property. It is observed from the closing statement of the real estate that no brokerage commission was paid for the sale of the property. Under these circumstances, we think equity would require that Mr. Bischoff receive reasonable compensation, not only for his services as executor of the estate, but also for his services in connection with the sale of the real estate.

 We also hold the trial court was in error in denying Mr. McMurray (Bell and Associates) compensation for legal services rendered to the estate and expenses incurred in connection therewith. The record shows Mr. Bischoff consulted Mr. McMurray about the legal ownership of the CD at the time they were trying to resolve the problems which arose concerning the title to the real estate. Mr. McMurray foresaw that bringing this matter to the attention of the beneficiaries of the will would likely cause complications in reaching a satisfactory resolution of the problems concerning the title to the real estate. For this reason, he elected not to present the matter to the beneficiaries until the real estate was sold. It was, however, fully disclosed to them shortly after the sale of the property by his letter dated September 14, 1990. Although the record fails to show that anyone was prejudiced by the delay in disseminating this information to the beneficiaries of the estate, the chancellor based his denial of attorneys' fees on this delay. In doing so,

he said, "Certainly in the Court's opinion there was a duty to make full disclosure of claims with regard to potential assets of the estate as soon as they became apparent. For that reason the Court would rule that Mr. McMurray is not entitled to compensation for his services and make reference to the case of *Third National Bank v. Cotten,* found at 536 S.W.2d 330, and the case of *Crawford v. Logan* found at 656 S.W.2d 360." Neither *Cotten* nor *Logan* lends support to the chancellor's ruling. In *Cotten,* attorneys' fees were denied to the attorneys who brought suit against the executor of the estate. In *Logan,* the court held that if no prejudice resulted to the client from the attorneys' misconduct, the full attorneys' fees would be allowed.

The decree of the chancellor is reversed and the complaint is dismissed. The case is remanded to the trial court for the entry of a decree in keeping with this opinion. The cost of this appeal, together with the cost of the trial court, is taxed to the Appellees.

FRANKS and McMURRAY, JJ., concur.