IN THE COURT OF APPEALS OF TENNESSEE

FILED

**October 3, 1996**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| | : | ANDERSON CHANCERY |
| | : | CA No. 03A01-9604-PB-00131 |
| | : | |
| | : | |
| IN RE: THE ESTATE OF | : | HON. WILLIAM  E. LANTRIP |
| SALLY B. COGGINS, deceased | : | CHANCELLOR |
| | : | |
| | : | |
| | : | AFFIRMED AND REMANDED |

JERRY SHATTUCK, WITH SHATTUCK & ELLEGE, OF CLINTON, TENNESSEE, FOR APPELLANT WILMA J. BOWMAN

LYNN M. LAUDERBACK, WITH LAUDERBACK & LAUDERBACK, OF KINGSPORT, TENNESSEE, and
HUGH P. CLINE, WITH CLINE, ADKINS & CLINE, OF NORTON, VIRGINIA, FOR APPELLEE LUCILE B. CARTER

O P I N I O N

Sanders, Sp.J.

The pivotal issue on this appeal is, if an attorney in fact issues a check to a bank, drawn on the checking account of her principal, for which the bank issues a time certificate of deposit for the amount of the check in the name of the principal "or" the attorney in fact, and there is no specific provision in the power of attorney for such transaction and no signature card or contract

relating to the certificate of deposit signed by either the principal or the attorney in fact, upon the death of the principal, which is entitled to the funds, the principal's estate or the attorney in fact?  We hold the estate is entitled to the funds, and affirm.

Sally B. Coggins died intestate in Anderson County in March, 1992.  She left three adult daughters, Wilma J. Bowman, Lucille B. Carter, and Pauline M. Fletcher, as her surviving next of kin.

In 1989, due to badly impaired eyesight, Mrs. Coggins executed a power of attorney designating her daughter, Wilma June Bowman, as her attorney in fact.  As pertinent, the power of attorney granted Ms. Bowman the following powers: (1) to endorse checks or drafts payable to me; (2) to make deposits in my bank account; (3) to sign and issue checks on my account to pay my bills and make purchases for my benefit; (4) to collect debts owed to me; (5) to purchase my necessities and execute contracts or agreements for my needs; (6) to buy or sell stocks, bonds or mutual funds that my attorney may deem to be in my best interest; (7) to settle, adjust or compromise any claims for personal injury, property damage or debt I may have against others or they against me.  It further provided:  "In other words, my attorney-in-fact is granted the power to manage my money and conduct my business affairs in general and to perform all and every other act or acts, thing or things, in law needful and necessary in and about the premises, as fully, completely, and amply, to all intents and purposes whatsoever as I might or could do if acting personally."

2

It appears Mrs. Coggins's husband, Van R. Coggins, died in the early part of 1990. After his death Mrs. Coggins had assets valued at approximately $400,000, consisting primarily of cash, certificates of deposit, stocks and securities. Between the latter part of 1990 and Mrs. Coggins's death in 1992, transfers were made, or attempts to transfer were made, of stocks, securities, and certificates of deposit in the names of Mrs. Coggins and Wilma J. Bowman, the attorney in fact, or members of her family, as joint tenants with the right of survivorship, in the amount of approximately $170,000.

In April, 1992, after Mrs. Coggins's death, Wilma J. Bowman and Lucille B. Carter, two of Mrs. Coggins's daughters, qualified in chancery court, probate division, as co-administrators of Mrs. Coggins's estate.

In May, 1992, Wilma J. Bowman filed in the court an inventory of the assets of the estate showing the assets of the estate to be $226,202.14. The bulk of the assets were certificates of deposit, savings accounts, checking accounts, and household furnishings and personal effects with a value of $20,000.

In August, 1993, Wilma Bowman filed a petition for confirmation of final settlement and to close the estate. She filed as an exhibit to the petition a list of income and expenses in the administration of the estate, together with the amount of assets to be distributed to the heirs of the estate. This consisted of income of approximately $900, expenses approximately $1,700 and distributable assets of approximately $205,000.

Lucille Carter, the co-administrator of the estate with Ms. Bowman, did not join in the inventory of the estate or the petition for confirmation of the final settlement, but filed objections to the petition and inventory and asked the court to deny the petition for confirmation and final settlement. As pertinent, Ms. Carter alleged that during the years Ms. Bowman had been attorney in fact for Mrs. Coggins, she had wrongfully and without authority caused stocks, securities, and certificates of deposit to be transferred from Mrs. Coggins's funds into stocks, securities and certificates of deposit in the joint names of Ms. Bowman or members of her family and Mrs. Coggins, with the right of survivorship. The amount involved was $169,000. These funds rightfully belonged to the estate but had been excluded from the inventories filed by Ms. Bowman. Ms. Carter asked the court to deny the petition for confirmation of the proposed settlement filed by Ms. Bowman, to hold a hearing and declare the $169,000 of assets to be assets of the estate, and require Ms. Bowman and the other members of her family to surrender these assets to the estate.

A hearing was ordered, which was originally held before the clerk and master. The hearings centered around three separate sets of transactions in which Ms. Bowman, as attorney in fact, was involved. One group involved stocks and securities of approximately $70,000 which were placed in the joint names of Ms. Bowman and Mrs. Coggins. Upon the hearing, the proof showed Mrs. Coggins had personally signed these transfer documents. The second set of documents involved two certificates of deposit in the amount of $10,000 each, one of which was in the joint names of Sally B. Coggins or Joe Kent Bowman, and the other was in the joint names of Sally B. Coggins or John Scott Bowman. The record also shows a check had been drawn on Mrs. Coggins's checking account in First

4

American National Bank for $20,000, payable to Sovran Bank for "2 C.D.'s @ $10,000 each."  The check was signed by Ms. Bowman under her power of attorney.

The record also shows Sally B. Coggins personally signed, jointly with Joe Kent Bowman, a signature card for the certificate of deposit which, as pertinent, states: "Joint tenants with right of survivorship."  Also, as pertinent, printed in one of the blocks on the signature card was "Acct.5SN/TAX ID No. and under this abbreviation was the number "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."  Also, attached to the signature card was a printed form with five separate squares followed by different printed statements for the person signing to check the square preceding the statement which was applicable. Above the blocks to be checked was printed the following: "Under penalties of perjury, I certify that" and following the square that was checked was: "the number shown on this form is my correct taxpayers identification number."  This form was personally signed by Mrs. Coggins.  A joint signature card of like import was also signed by Mrs. Coggins with John Scott Bowman and the same certifying attached form was signed by Mrs. Coggins.

The third set of documents around which the hearing revolved, and the ones at issue on this appeal, are five separate, purported certificates of deposit in the joint names of Sally B. Coggins "or" Wilma J. Bowman which were purchased by Wilma Bowman with Mrs. Coggins's money, between March 5, 1990 and March 2, 1992, in amounts from $10,000 up to $29,000, for a total of $80,000. Mrs. Coggins did not participate in any way in the purchase of these certificates.  She did not sign any signature cards or any other documents relating to these certificates, and neither did

5

Wilma Bowman sign signature cards in connection with the certificates.

In his report, the clerk and master recommended an order be entered holding the stocks and securities transferred to the joint names of Sally B. Coggins and Wilma J. Bowman in the amount of approximately $70,000, with the right of survivorship, and the two certificates of deposit of $10,000 each, in the joint names of Sally B. Coggins and Joe Kent Bowman and John Scott Bowman, respectively, with the right of survivorship, all having been signed by Mrs. Coggins, pass outside the estate of Mrs. Coggins. He recommended, however, that the five certificates of deposit in the names of Sally B. Coggins or Wilma J. Bowman, in the total amount of $80,000, be declared assets of the estate.

The Appellant filed objections to the report of the clerk and master and filed a petition pursuant to Rule 53.04, TRCP, asking the court to reject the recommended report of the clerk and master insofar as it recommended the certificates of deposit be declared assets of the estate.

The Appellee, Lucille Carter, in response to Appellant's petition, asked the court to affirm the clerk and master's report.

The chancellor conducted a hearing pursuant to Appellant's petition. Upon the hearing, he, in effect, affirmed the recommended report of the clerk and master. He held the certificates of stock and securities on which Mrs. Coggins had signed transfer documents and the two certificates of deposit on which she had signed signature cards should pass outside the estate to the surviving parties. He also held the remaining five

6

certificates in the names of Sally B. Coggins or Wilma J. Bowman should pass to the estate. As pertinent, the court, in his brief opinion, said: "The remaining certificates were acquired by the fiduciary and established in her name and the name of the deceased for which no signature cards were presented. The account is silent as to any right of survivorship. The proceeds were stipulated to be solely from the monies of Sally B. Coggins.

"A review of the Power of Attorney convinces me that the fiduciary did not possess the authority to establish these accounts. I further find that these accounts are not survivorship account.

"I therefore find that these remaining certificates constitute a part of the decedent's estate and do not in any manner pass to Wilms J. Bowman."

Ms. Bowman has appealed, saying the court was in error in holding the five certificates of deposit constituted a part of decedent's estate and did not pass to her. We cannot agree, and affirm.

The issues for review presented by the Appellant in her brief are as follows: (1) "Can the trial court declare invalid transactions done at the direction of a principal who was competent, not under undue influence, aware of the transactions both before and after the fact; and without hearing evidence to establish the fairness of the transactions because they were effected by her agent through a power of attorney due to the principal's legal blindness and resulting difficulty in writing?" and (2) "Did the proof in this case and the offer of proof establish the fairness of the transactions involving the creation and existence of five certificates of deposit in the name of Sally

7

B. Coggins, and her daughter, Wilma J. Bowman, by clear and convincing evidence?"

The Appellant's 26-page brief, following the above-stated issues, consists of a restatement of the testimony of the witnesses in the hearing before the chancellor. Appellant's argument is that the testimony established there was no undue influence exercised over Mrs. Coggins. The Appellant, however, fails to cite a single case or any statute in her brief to support her argument that the court was in error.

There was no contention on the trial of the case, nor is there any on this appeal, by the Appellee, Ms. Carter, that Ms. Bowman exercised undue influence over Mrs. Coggins. Mrs. Coggins was not a party to purchasing the certificates of deposit here at issue. It was Ms. Bowman, acting alone, using her power of attorney and the funds of Mrs. Coggins, who purchased the certificates of deposit and had her name added as a joint beneficiary.

In his determination of the case, the chancellor made the following findings of fact and conclusions of law: 1."The...certificates were acquired by the fiduciary and established in her name and the name of the deceased, for which no signature cards were presented." 2. "The account is silent as to any right of survivorship." 3. "The proceeds were stipulated to be solely from the monies of Sally B. Coggins." 5. "A review of the power of attorney convinces me that the fiduciary did not possess the authority to establish these accounts." 5. "I...find these accounts are not survivorship accounts".

8

The law and the evidence support each of the findings of the chancellor. The Appellant, however, does not address a single one of these specific issues.

The general rule in construing powers of attorney is:

It is the general rule that a power of attorney must be strictly construed and strictly pursued. Under this rule, the instrument will be held to grant only those powers which are specified, and the agent may neither go beyond nor deviate from the power of attorney--in other words, the act done must be legally identical with that authorized to be done. For example, an attorney in fact has no power to make a gift of his principal's property unless that power is expressly conferred on him by the instrument or unless such power arises as a necessary implication from the powers which are expressly conferred.

Where the mode of exercising power is prescribed in the instrument in which it is created, there must be a strict compliance therewith in every substantial particular.

Where power is conferred on an agent by a power of attorney, the meaning of general words in the instrument is restricted by the context and construed accordingly and the authority given is construed strictly, so as to exclude the exercise of any power that is not warranted either by the terms actually used or as a necessary means of executing with effect the authority given. Accordingly a general clause in a power of attorney given for a specific purpose, authorizing the agent to do "any and every act" in the principal's name which he could do in person, must be construed to relate to the specific purpose, and does not constitute such agent a general agent.

3 Am.Jur.2d Agency §§ 31, 32, p. 535.

We agree with the chancellor that the attorney in fact did not possess the authority under the power of attorney to establish the certificates of deposit and they are void and of no effect.

The Appellee relies upon TCA § 34-6-108(c)(6), which provides: "(c) Nothing contained in this section and § 34-6-109 shall be construed to vest an attorney in fact with, or authorize

9

an attorney in fact to exercise, any of the following powers: ....
(6) Change, add or delete any right of survivorship designation on
any property, real or personal, to which the principal holds
title, alone or with others."

We agree this section of the Code would expressly
prohibit the attorney in fact from creating the certificates of
deposit.  We observe the statute became effective in 1991 and four
of the certificates predate the statute.  The court was correct in
his finding that the certificates of deposit contained no
provision creating a right of survivorship and no signature card
was presented.

We think the case of **Lowry v. Lowry**, 541 S.W.2d 128
(Tenn.1976) is controlling in the case at bar.  In **Lowry**, our
supreme court adopted the contract theory in this jurisdiction as
the basis for creating a joint tenancy with the right of survivor,
as opposed to the gift theory used in some other states.  In
adopting the contract theory, the court said, in effect, a right
of survivorship may be created by a written contract between the
parties and the signature card may be looked to to ascertain the
intent of the parties.  Id. 130, 131.

The following quotes are from the **Lowry** court:
"Although some jurisdictions have adopted the 'gift' theory...we
feel the better reasoned approach utilizes the 'contract' theory."
Id. at 130; "Of primary importance is the case of **Melhorn v.
Melhorn**, 208 Tenn. 678, 348 S.W.2d 319 (1961)...[T]he Court looked
to the intention of the parties as expressed by the joint
signature card and the testimony of the bank officers, and made it
clear that it considered the joint account a contractual

10

undertaking." Id. at 130, 131;  "The most recent Tennessee case relevant to the issue is **Iacometti v. Frassinelli**, 494 S.W.2d 496 (Tenn.App.1973)....The Court stated that absent a finding of fraud, undue influence, or overreaching: '...the written agreement signed by the deceased speaks just as loudly and clearly as if the deceased herself took the stand and orally expressed the words written on the paper.' Id. at 500". Id. at 131;  "Absent clear and convincing evidence of contrary intent expressed at the time of its execution, we hold that a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms; and upon the death of one of the joint tenants, the proceeds pass to the survivor." Id. at 132.

We hold that, absent a signature card or other written document signed by the parties creating a joint tenancy with the right of survivorship, none was created.

The decree of the chancellor is affirmed.  The cost of this appeal is taxed to the Appellant and the case is remanded to the trial court for any further, necessary proceedings.


_____
Clifford E. Sanders, Sp.J.


CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.

11