IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, October 17, 2003

## IN RE: ESTATE OF CARL MYERS, REBECCA DYKE and KEVIN BRUCE BRANTLY v. GLENDA SEYMOUR and JUDY A. TOLLIVER and COMMERCIAL BANK

Direct Appeal from the Chancery Court for Union County, Probate Division
No.  815    Hon. Billy Joe White, Judge

FILED JANUARY 16, 2004

No. E2002-01154-COA-R3-CV

The Trial Court voided agreements with Bank by Decedent creating survivorship accounts with his daughter on grounds of incompetency.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Timothy P. Coode, Knoxville, Tennessee, for Appellant.

David H. Stanifer, Tazewell, Tennessee, for Appellee.

## OPINION

The dispositive issue on appeal is whether the Trial Court erred in finding that the Decedent was incompetent for purposes of transferring assets to his daughter through survivorship accounts which otherwise would have been part of his estate.

This case arises from the Executor's efforts to marshal the assets and administer the Estate of the Deceased, Carl Myers.  Myers, age 87, died on April 18, 1998, three months after his admission to a nursing home.  The Petitioners are his daughter and grandson; the Respondent is also a daughter.

In March 1993, Myers conveyed by quitclaim deed to respondent, Glenda Seymour, a tract of approximately six acres which included his home, a barn and other building. In July of 1993, Decedent executed a Will bequeathing the balance of his property to petitioners. The Will recites that Decedent had previously conveyed the above-mentioned real property to Glenda Seymour, and the remainder of his estate was devised in equal shares to the petitioners. Attorney David Myers who drafted the Will was appointed Executor.

On February 14, 1998, Decedent was admitted to a nursing home by Ms. Seymour. The admission documents stated his mental status as "confused". A box on the Physician's Admission Order is checked stating: "Resident is incapable of giving informed consent and/or able to participate in treatment plan. Surrogate decision maker is Glenda Seymour." Three days later, Seymour was added to Mr. Myers' checking account as a joint owner with right of survivorship. A bank employee testified the bank procedure is that any document adding a person to an account must be signed in the presence of a bank employee, which was not done in this case. Another bank employee testified that Ms. Seymour came into the bank during this period and asked how to cash out a certificate of deposit if the owner was incapable of coming to the bank in person.

On March 5, 1998, Decedent signed a request for withdrawal of funds from a certificate of deposit account, and a cashier's check for $38,000.00 payable to Decedent was issued to him the next day. Three days later, on March 9, he purchased another CD for $38,000.00. The bank employee testified that this certificate of deposit was transferred to Glenda Seymour on March 12, 1998.

A second Will with a date of March 27, 1998 was signed by Decedent. This Will devises the Deceased's entire estate to Glenda Seymour.

After Myers petitioned for probate of the 1993 Will, the record establishes that Ms. Seymour prepared a Petition for Letters Testamentary for the March 27 Will on April 24, 1998, but it was not filed with the Court until August 10, 1998. According to the uncontradicted testimony of Attorney Myers, discovery depositions in the Will contest case revealed that the attesting witnesses to the March 27 Will did not, in fact, observe Decedent sign that Will, and ultimately Seymour withdrew her Petition to Probate that Will.

Decedent's nursing home records were admitted into evidence, and the nurse's notations entered on a daily basis, described Decedent as "confused and disoriented". The evidence establishes that Decedent was very feeble and in a weakened physical condition and required much care taking for his daily needs. The nursing home records contain episodes reflecting on the Decedent's mental condition, and on one occasion he thought there was a truck in the hallway, and on another instance, he insisted that his window be opened so he could smell smoke if there was a fire. Notably on March 11, 1998, the record states "Continuous confusion, continues to talk of fire. Wants the window open so he can smell the smoke if he needed to; continues to be confused", and on March 12 "Confused, thought he was in the bedroom and kitchen." The following day he was confused about the time of day and place. The Deceased's grandson stated that "the state of mind

of his grandfather was not good and that he was often confused and thought he was still in his home". He said he never discussed his grandfather's confusion with anyone "because it was obvious and everyone would have known, due to the individual's age being 87 years of age and was the sole purpose of why he was put in the nursing home." A bank employee, Michelle Hulliston, testified that the bank procedure was for the document to be signed in the presence of a bank employee, and the witness stated that from the document changing Decedent's account, it was obvious the procedure was not followed, and that adding Glenda Seymour was a violation of bank procedure.

The account was closed by Glenda Seymour on March 6, 1998, even though there is a discrepancy in the notarization date of March 5, 1998. The bank employee testified that if the notarization had not been present, they would not have cashed the certificate of deposit. The employee further testified the second certificate of deposit was again closed on March 12, 1998 and converted to Glenda Seymour. Judy Tolliver was then called as a witness and stated she was a notary in the book-keeping profession. She testified she did not know Myers personally, but was acquainted with Glenda Seymour. She testified that Glenda Seymour asked her to notarize documents. She recalled going to the nursing home only on one occasion being March 12, 1998, and cannot explain how her notary seal got on the two separate documents on two separate dates. She indicated she did not have any explanation of the discrepancy. At the conclusion of the proof, the Court found, based upon the credibility of the witnesses as to the condition of the Decedent and documentary evidence, that decedent was incompetent to transact any business at the times the transactions took place and set aside the document vesting his assets in respondent Seymour.

In general, joint bank accounts with right of survivorship are immune from attack in the absence of fraud, misrepresentation, duress, undue influence, mutual mistake or incapacity. *Lowry v. Lowry,* 541 S.W.2d 128, 131 (Tenn. 1976). A business transaction is voidable on the grounds of incompetency when the party is unable to understand in a reasonable manner the nature and consequences of the transaction, or when the party is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of this condition. *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001); Restatement Contracts (Second) §§ 164 (comment e), 177 (comment c) (1981). The party seeking to rescind the conveyance because of mental incapacity had the burden of proof to show the party was incompetent at the time the transaction was made. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000). Petitioner's evidence made out a prima facie case showing Decedent was incompetent to execute the documents, and the burden shifted to respondent to show Decedent's mental capacity at the time he signed the document, and that he comprehended the consequences of his Estate by creating joint accounts with survivorship rights. The statement of the evidence indicates respondent offered no proof in support of her position.[1]

In sum, taking into account the circumstances leading up to and surrounding the execution of these documents, and deferring to the Trial Court as to the credibility and weight of oral

---

[1]The Trial Court also found the transaction in dispute amounted to fraudulent transfers. We pretermit discussion of this issue.

testimony, we conclude, as did the Trial Court, that the Deceased was not competent to enter into these contractual relationships with his daughter.

Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Glenda Seymour.

_____
HERSCHEL PICKENS FRANKS, J.