# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 7, 2012 Session

## G. PERRY GUESS, EXECUTOR OF THE ESTATE OF C. CHARLTON HOWARD
## v. ELIZABETH G. FINLAY

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0884     Jeffrey M. Atherton, Chancellor**

---

**No. E2011-00947-COA-R3-CV-FILED-APRIL 16, 2012**

---

This case involves[1] a dispute between G. Perry Guess ("the Executor"), Executor of the Estate of C. Charlton Howard ("the Deceased"), and the Executor's sister, Elizabeth G. Finlay ("the Survivor"), regarding the ownership of funds, following the death of the Deceased, in several bank accounts and certificates of deposit. The trial court awarded the bank accounts to the Executor and the CDs to the Survivor. The Executor claims he is also entitled to the CDs while the Survivor argues that she should have received all of the funds. We reverse that portion of the trial court's judgment awarding the bank accounts to the Executor. We modify the judgment in favor of the Survivor so as to award to her all of the bank accounts as well as the CDs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; the Unreversed Part of the Judgment is Modified and, as Such, is Affirmed; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

C. George Caudle, Chattanooga, Tennessee, for the appellant, G. Perry Guess.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellee, Elizabeth G. Finlay.

---

[1]There were two lawsuits in the trial court pertaining to the Deceased's estate. The Executor sued to recover, for the estate, funds in the disputed bank accounts and the CDs (No. 08-0884), and the Survivor filed a will contest (No. 09-0022). The cases were consolidated and tried in separate phases on consecutive days. At the close of the first phase, the trial court upheld the validity of the Deceased's will. Trial then proceeded regarding the accounts and the CDs. The Survivor did not appeal from the adverse judgment in the will contest case. As a result, this appeal only involves issues related to the trial court's determination of ownership of the accounts and the CDs in No. 08-0884.

## OPINION

### I.

The Deceased died on September 25, 2007. He was survived by many nieces and nephews, including the Executor and the Survivor. The Survivor had long been close to the Deceased. In his later years, the Deceased, whose eyesight was increasingly poor, primarily relied upon the Survivor to transport him and assist him with his medical appointments and other personal matters. In August 2007, a little more than a month before the Deceased died, he executed a new will replacing one executed in July 2005. Under the new will, the Executor was substituted for the Survivor as executor of his estate. The Deceased also bequeathed to the Executor the 30% of the residuary estate that previously had been willed to the Survivor. By all accounts, the change was prompted by a disagreement between the Deceased and the Survivor over whether the Deceased should be moved to an assisted living facility.

At the time of his death, the Deceased held several joint bank accounts and CDs with the Survivor, all with SunTrust Bank, which assets totaled approximately $242,000. More specifically, there were five items – a checking account, a money market account, and three CDs (collectively "the SunTrust accounts"). The bulk of the funds – some $185,000 – were invested in the CDs. The Survivor testified that, following the Deceased's death, she withdrew the balance of the funds in the SunTrust accounts on the advice of her attorney.

At trial, it was undisputed that the Deceased was the source of all of the funds in the SunTrust accounts. On some of the accounts, the Survivor's name had been on the accounts from their inception, while on others her name was added later. The Survivor did not question the Deceased's decision and, although she was aware of the joint accounts, the only withdrawals she made during the Deceased's life were for his use or benefit. Much of the proof addressed the establishment of the joint accounts. The proof showed that, in 2005, on the same day the Deceased gave the Survivor a power of attorney and made her his executor, they went to the bank and the Deceased added the Survivor's name on his existing checking account. In April of the following year, the Deceased and the Survivor went to the bank and the Deceased deposited $107,869.28 in a new money market account in both of their names. Both accounts were titled in the names of "MR C. CHARLTON HOWARD OR MRS ELIZABETH FINLAY." (Capitalization[2] in original; there is no period after MR and MRS in the original.) For each of these two accounts, the bank provided a "Personal Account

---

[2]Both names are in capital letters but the Survivor's name is in a smaller font. There is no testimony or other evidence explaining the difference in font size. We conclude that the font difference is not material to the resolution of the issues in this case.

Signature Card"[3] which was signed by both the Deceased and the Survivor. Below the signature lines, the following statement appears:

> It is agreed that all transactions between the Bank and the above signed shall be governed by the rules and regulations for this account and the above signed hereby acknowledge(s) receipt of such rules and regulations . . . . "

At the time the Deceased opened the money market account, he also purchased a $100,000 CD in his name and the Survivor's name. Later that month, on two separate dates, the Deceased returned to the bank and purchased two more CDs, again in both of their names, for $50,000 and $39,936.76 respectively. For each CD, the bank issued a "Time Deposit Receipt" that expressly stated that "the above named acknowledges receipt of the Rules and Regulations for Deposit Accounts and agrees to be bound by the same."

The various account transactions mainly were handled by Mr. Charles Young, a SunTrust branch manager, as evidenced by his name or signature on some of the account documents. At trial, Mr. Young recalled that the Deceased and the Survivor came to the bank when the money market account was opened and, at another time, Mr. Young personally took some bonds to the Deceased's home for him to sign in connection with the purchase of one of the CDs. Otherwise, Mr. Young recalled few details of the transactions. His testimony was generally limited to explaining the procedure he customarily employed in meeting with clients to assist them in opening new accounts and in generating the documents related to those accounts.

Mr. Young testified that, based upon his usual practice, he would have met with the Deceased to ascertain what his wishes were with respect to his funds. Then, the various types of accounts SunTrust offers would be explained. Once the Deceased had decided on a specific type of account, Mr. Young would enter the relevant information into a computer to generate the necessary account documents. He explained that the bank did not utilize pre-printed form documents to indicate the type of account, but generated the appropriate documents according to the type of account selected by the customer. Mr. Young testified it was his standard practice to provide the customer with the bank's rules and regulations when a deposit account was opened. He noted that the rules and regulations were also included in the new account kit provided when a CD is purchased. Mr. Young could think of no reason why he would not have followed his usual practice in his dealings with the Deceased, including the purchase of the three CDs. Mr. Young testified that SunTrust treats

---

[3]While the document is referred to as a "Card," it is actually on 8 ½ by 11 inch paper with a good deal of printed material.

all joint accounts as being with right of survivorship. He explained that other types of accounts are available if a person wants to allow another individual, such as an "authorized signer," to act as the agent of the former with respect to an account but did not want to establish a right of survivorship. Mr. Young testified that the Deceased appeared to understand what he was doing in opening the accounts; he said he had no reason to believe the Deceased was being influenced by the Survivor in the transactions or that the Deceased was unaware that the accounts being opened by him were with right of survivorship.

The proof further indicates that, even after the Deceased changed his will, he never took any action or stated any plan to remove the Survivor's name from the SunTrust accounts. In fact, there was testimony indicating that the opposite was true. The Deceased's caregiver testified that she asked the Deceased whether the Deceased also planned to "take [the Survivor] off" the accounts, and the Deceased answered to the effect, "No. I took her off the will, because I'm mad at her. The [SunTrust] money is hers because she was good to me."

The Executor sued the Survivor to recover, on behalf of the Estate, all of the withdrawn funds. The Executor essentially alleged that the Survivor wrongfully withdrew and converted to her own use funds that rightly belonged to the Deceased's estate. The Survivor, on the other hand, maintained that the money came to her as the surviving owner of the SunTrust accounts.

In its bench ruling, the court made the following pertinent findings and conclusions:

> [C]learly [the Deceased's] intent at the time that he entered into these accounts is the simple focus of our hearing today.
>
> [I]n all candor, based upon the testimony of [the Deceased's caretaker], and even that of [the Executor], it was the [D]eceased's understanding that the money in the bank was his alone to give.
>
> *   *   *
>
> So it takes us back to the time the accounts were opened. We had conversation about [Tenn. Code Ann. §] 45-2-703. But clearly the account[s], the bank is not doing what it is obligated to do under the statute and that [is] utilize[] account documents that enable the depositor in the state of Tennessee to designate ownership. If it can provide opportunities to depositors in other

-4-

states,[4] why can they not reprint their form to provide that same opportunity to their depositors in . . . Tennessee to designate the type of account?  In the Court's opinion, that is exactly what is required under the statute.

In reviewing this case, however, the Court is also stuck with the Roberts v. Roberts decision.  It states unequivocally that 45-2-703 does not apply to certificates of deposit.  So the Court has to go back to, well, what was the status of the account when opened and what type of accounts when opened?

The Court is of the opinion that [the Executor] has carried the burden of proof in terms of indicating the lack of opportunity to designate.  The Court is not of the opinion that [the Survivor] has carried . . . [her] obligation to present rebuttal by clear and convincing evidence.

That being said, therefore, the checking account, money market accounts that are applied to the case belong[ ] to the estate.  However, as stated in Roberts . . . , the certificates of deposit do not.

(Underlining in original; footnote added.)

Consistent with its opinion, the trial court awarded judgment in favor of the Deceased's estate in the amount of $57,576.40 – the amount withdrawn from the checking and money market accounts – plus prejudgment interest of $18,914.04 and discretionary costs.  In response to the parties' post-judgment motions, the trial court made the following additional findings of fact and conclusions of law:

---

[4]The trial court is talking about the following.  At the bottom of the two Personal Account Signature Cards signed by the Deceased and the Survivor with respect to the checking and money market accounts, there is the following underlined statement: "For residents of Arkansas, Maryland, North Carolina, Virginia, and Washington, D.C. *only.*"  (Emphasis added.)  The verbage that follows the statement explains the difference between "with survivorship" and "without survivorship."  It refers the depositor to "the Rules and Regulations For Deposit Accounts for additional information."  Below this there are two boxes – one for "with survivorship" and one for "without survivorship."  The depositor is directed to "[c]hoose [o]ne."  Neither box is checked in this case.  There is no suggestion in the record that Tennessee law – unlike the apparent law of the identified four states and the District of Columbia – requires that one of these boxes be selected by the depositor.

The SunTrust documents relating to the opening of accounts do not comply with T.C.A. § 45-2-703 (d) as they did not provide the depositor, in this case [the Deceased], the opportunity to designate the depositor's intent concerning the ownership interest in a multi-party account.

[I]t was the intent of the [D]eceased, at the time of the creation of the accounts and at all relevant times thereafter, that although [the Survivor] may have access to and use of his accounts during his lifetime, all of the contents of all of his accounts were to be considered his own, without the creation of, conveyance of or establishment of a right of survivorship interest in the account in or to [the Survivor].

[I]rrespective of the lack of compliance with T.C.A. § 45-2-703(d) by the bank, the presumption provided by . . . § 45-2-703(e)(4) applies to the checking account and money market accounts, such that [the Survivor] would be presumed to have only a power of attorney with respect to those accounts. The presumption was not overcome by clear and convincing evidence, not only due to the inadequacy of the bank documents themselves, but further, the proven intent of the [D]eceased and the lack of proof of conveyance of or explanation of the bank's Rules and Regulations (and their creation by default of joint accounts with right of survivorship) provided by the bank employee, Charles Young, to the [D]eceased, regardless of the [D]eceased's known vision problems.

The impact of *Roberts v. Roberts*, 827 S.W.2d 788, 796 (Tenn. App. 1991) on this case is its holding that T.C.A. § 45-2-703 does not apply to certificates of deposit.[5] Therefore, the presumptions provided by § 45-2-703(e)(4) do not apply to certificates of deposit. Without the application of . . . § 45-2-703, *Roberts* dictates that the language in the bank's documentation, regardless of the depositor's intent, controls. In this case, SunTrust's "Rules and Regulations" state that a joint account is deemed a joint account with survivorship.

---

[5]"Regardless, apparently, of the language contained in § 45-2-703(c) which states 'including a certificate of deposit.' "

* * *

[I]n the event the Court is in error concerning its interpretation of *Roberts* and/or the application of T.C.A. § 45-2-703 to this case, the evidence would warrant the awarding to the Estate not only the money market and checking accounts, but also the certificates of deposit. Specifically, should *Lowry v. Lowry*, 541 S.W.2d 128 (Tenn. 1976) . . . control, the apparent presumption that each party has a right of survivorship in the joint accounts was rebutted, clearly and convincingly, by the Estate.

* * *

Alternatively, should the presumption provided by T.C.A. § 45-2-703(e)(4) . . . control, [the Survivor] did not carry her burden . . . to show that a right of survivorship was created, rather than merely a power of attorney with respect to any of the accounts, including the certificates of deposit.

(Footnote in original).

The Executor appeals. Both parties raise issues regarding the disposition of the SunTrust accounts.

## II.

The Executor presents a single issue for our review. As stated in his brief, it is as follows:

Whether the trial court erred when it held that the provisions of Tenn. Code Ann. § 45-2-703 do not apply to certificates of deposit generally and denied the Executor's claim for the recovery of the funds represented by three certificates of deposit with SunTrust Bank.

The Survivor raises the following additional issues taken verbatim from her brief:

Did the trial court err by disregarding this Court's controlling precedent of *Estate of Disa True v. Padgett* and ruling, despite the identical SunTrust account language, the contracts at issue

-7-

did not satisfy Tenn. Code Ann. § 45-2-703 and were not "clear and unambiguous" notwithstanding this Court's explicit rulings to the contrary?

Did the trial court err in ruling, in its Order of additional findings of facts and rulings of law, that even if mistaken regarding *Roberts* and the application of Tenn. Code Ann. § 45-2-703, that clear and convincing evidence was presented by the Estate to rebut the presumptions imposed by Tenn. Code Ann. § 45-2-703 and *Lowry v. Lowry*, of survivorship rights in the joint accounts?

## III.

In this non-jury case, our review is de novo upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual findings that we must honor "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. **Campbell v. Florida Steel Corp**., 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993).

## IV.

The parties each challenge various aspects of the trial court's ruling. The basic issue, however, is simply this: Who owns the SunTrust accounts following the death of the Deceased? The pivotal question becomes whether, under applicable law, the SunTrust accounts were with "right of survivorship." Our inquiry is controlled by Tenn. Code Ann. § 45-2-703 (2007). That section governs deposits to bank accounts *and also CDs* in the names of two or more persons. It provides, in pertinent part, as follows:

> (a) When a deposit has been made or is hereafter made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, the deposit, or any part of the deposit, or any interest or dividend on the deposit, may be paid to either person, whether the others are living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.

\* \* \*

(c) As used in subsections (c)-(f), "multiple-party deposit account" means a deposit account, including a certificate of deposit, established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons, or any of them, including, but not limited to, an account of the type described in subsection (a).

(d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents that enable the depositor to designate ownership interest therein in terms substantially similar to the following:

(A) Joint tenants with right of survivorship;

(B) Additional authorized signatory; and

(C) Other deposit designations that may be acceptable to the bank.

(2) Account documents that enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account may include any of the following:

(A) The signature card;

(B) The deposit agreement;

(C) A certificate of deposit;

(D) A document confirming purchase of a certificate of deposit; or

(E) Other documents provided by the bank or deposit institution that indicate the intent of the depositor.

(e) Accounts described in subsection (c) shall establish the following interests:

(1) A designation of joint tenants with right of survivorship, or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

\* \* \*

(4) In the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated. Any other person to whose order the accounts or certificate of deposit is subject shall be presumed to have power of attorney with respect to the account or certificate of deposit and not to be an owner of the account or certificate of deposit. The presumptions may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings.

(f) Without incurring any liability, any bank may, but shall not be required to, provide to depositors disclosures in form similar to the following:

(1) JOINT TENANTS WITH RIGHT OF SURVIVORSHIP. This designation means that the deposit account or certificate of deposit shall become the property of each owner as joint tenants, and that the survivor is entitled to all moneys in the account or represented by the certificate even if the first person to die had a will specifically directing disposition to someone else. The bank may release all moneys in the account or represented by the certificate to, or honor checks or orders drawn by, or withdrawal requests from, the survivor upon the death of any joint tenant. . . .

(Capitalization in original.)

Also relevant to our review are SunTrust Bank's "Rules and Regulations for Deposit Accounts" applicable to the SunTrust accounts in dispute.[6] Pertinent portions include the following:

> All Accounts are subject to the signature card or authorizing documents and any additional agreements executed by the Depositor and the Bank and these rules and regulations….

> \* \* \*

> **"Joint Account", also referred to as "Joint Account with Survivorship"**, is an Account which is owned by two or more individuals as joint tenants with right of survivorship and not as "tenants in common" or "tenants by the entirety." Upon the death of one of the joint owners, the Account will belong to the surviving joint owner or joint owners….

> \* \* \*

> You are not permitted to change the account ownership to anything other than a "joint tenants with right of survivorship," including "tenants by the entirety" or "tenants in common" without the Bank's approval. We will treat all Joint Accounts, unless otherwise indicated on the Bank's records, as "joint tenants with right of survivorship" for all purposes, including, but not limited to writs, levies, setoffs, and determination of ownership upon death.

(Bold print in original.)

At trial, the Executor argued that the documents evidencing the establishment of the accounts were not in compliance with the statute and, therefore, he reasoned, that the Deceased's intent regarding ownership of the accounts could not be ascertained from those documents. According to the Executor, it was the Survivor's burden to show that the Decedent clearly intended for her to receive the account funds at his death. Counsel argued:

---

[6]At the time the Deceased added the Survivor's name to his checking account, the 2005 version of the Rules and Regulations was in effect. For ease of reference and the sake of brevity, we quote only from the 2006 Rules and Regulations in effect at the time of the remaining transactions, which, as relevant to our review, contain essentially identical provisions to those in existence in 2005.

Your Honor, 45-2-803 requires SunTrust to provide account documents that give the depositor the option to figure whether a multi-party deposit account is to be held as a joint tenant with right of survivorship or not. And specific language must be used, not some ambiguous language.

Ambiguous language or lack thereof simply doesn't comply with the statute. The purpose of this statute was to promote clarity that these SunTrust documents complied with the statute. If not only had the documents, but the way they had ultimately been utilized in connection with these accounts, was done in a manner that could provide to this Court a clear understanding of what [the Deceased's] intent was, then we wouldn't be here. But they don't. And the manner in which they were utilized certainly doesn't provide to the Court the sort of clarity that 45-2-703 demands.

In ordering that the Executor should recover the funds in the money market and checking accounts, the trial court agreed with the Executor's position. As set out above, the court found that the bank's documents failed to comply with the requirements of Tenn. Code Ann. § 45-2-703. In particular, the court found that the documents did not provide the Deceased the opportunity to "designate ownership interest" in the accounts at the time of their creation. *See* Tenn. Code Ann. § 45-2-703 (d)(1). Having concluded that there was no designation of the Deceased's intent, the court applied the statutory presumption in subsection (e)(4) of the statute to find that the Survivor held nothing more than power of attorney authority over the accounts and that she failed to present sufficient evidence to overcome this presumption. As to the CDs, the court expressly found that it was bound by prior case law and, accordingly, held that the statute's provisions do not apply to those interests.

As would be expected, the Executor only challenges the trial court's determination – that Section 45-2-703 does not apply to certificates of deposit, and that, absent the application of the statute, SunTrust Bank's documentation controls the ownership of the certificates "regardless of the depositor's intent." The gist of the Executor's argument is that the statute does apply to CDs and, as a result, the analysis employed as to the other accounts also leads to the conclusion that the CDs belong to the estate. We agree with the Executor that the CDs are covered by the language of Tenn. Code Ann. § 45-2-703. We disagree with his assertion that the application of that statute supports a holding that the CDs passed to him as the Deceased's personal representative.

-12-

The Executor correctly notes that the purpose behind various amendments to Section 45-2-703 was to bring "clarity, certainty, and a reasonable amount of uniformity" to matters of "the existence and nature of joint tenancies in bank accounts. . . ." *In re Estate of Paul Harris Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265 at *9 (Tenn. Ct. App. M.S., filed Mar. 22, 2007). On the other hand, the Survivor contends that the SunTrust accounts were conclusively created with a right of survivorship. The Survivor relies heavily upon this Court's decision in *Estate of True v. Padgett*, No. E2005-01584-COA-R3-CV, 2006 WL 2818239 (Tenn. Ct. App. E.S., filed July 17, 2006).

In *True*, the estate of the decedent, Mrs. True, sued the Padgetts for the return of monies the Padgetts withdrew from a checking account to which Mrs. True had added their names. The account was at SunTrust bank and was opened with a signature card and incorporated rules and regulations that are virtually identical to those challenged in the present case. The evidence showed that the account signature card was brought to Mrs. True at the nursing home where she then resided, it was signed and witnessed, and returned to the bank; there was no direct evidence that Mrs. True ever received a copy of the rules and regulations for the account. The trial court dismissed the estate's case based on its conclusion that the account created was joint with right of survivorship. This Court affirmed. We quote extensively from our opinion:

> In its brief on appeal, the Estate argues, in part, that there is no "expressed contract in this case" because "the signature card does not specify at all what kind of account it is" and "[t]he rules and regulations do not in any way specify the type of account was (sic) created by Mrs. True and the Padgetts." (emphasis deleted). Respectfully, the Estate is mistaken.
>
> Ms. True and the Padgetts executed a signature card for the Account that clearly and unambiguously states that "all transactions between the Bank and the above signed shall be governed by the rules and regulations for this account and the above signed hereby acknowledge(s) receipt of such rules and regulations...." The Rules and Regs clearly and unambiguously provide that SunTrust Bank "will treat all Joint Accounts as 'joint tenants with right of survivorship' for all purposes, including, but not limited to writs, levies, setoffs, and determination of ownership upon death." Further, the Rules and Regs clearly and unambiguously provide that SunTrust Bank will "not [be] bound by an attempt by you to change the account

-13-

ownership to anything other than a 'joint tenants with right of survivorship'. . . ."

The provisions of the contract created by the signature card and the Rules and Regs are clear and unambiguous, and we must give effect to the parties' intent. It is not the role of this Court "to make a different contract than that executed by the parties." "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought to be harsh or unjust." The record on appeal reveals no fraud or mistake and, therefore, we must interpret and enforce the contract as written.

SunTrust Bank complied with Tenn. Code Ann. § 45-2-703 by providing a signature card and a deposit agreement, the Rules and Regs, that enabled the depositor, Ms. True, to designate ownership interest in the Account when Ms. True changed the Account from an individual account to a multiple-party deposit account, a joint account. Under Tenn. Code Ann. § 45-2-703 (e)(1) the designation of the Account as joint tenants with right of survivorship "shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor." Tenn. Code Ann. § 45-2-703 (e)(1) (2000). We note that our holding is supported by the uncontradicted testimony of Ms. Garren that Ms. Garren "pulled out the rules and regs…" when explaining to Ms. True that if Ms. True added the Padgetts' names, that "they would have equal ownership of this account.…" Given this, we hold that the Trial Court correctly held that the Account was owned by Ms. True, William Bryant Padgett, and Wende Padgett as joint tenants with right of survivorship.

Our resolution of the Estate's first issue pretermits the necessity of considering its second issue as the Estate was attempting to use . . . excluded evidence to prove that Ms. True did not have the intent to create a joint account with right of survivorship. As discussed fully above, the conclusive evidence establishes that Ms. True intended to create and did so create an account as joint tenants with right of survivorship.

-14-

*Id*. at * 5-6  (internal citations omitted).

The Executor, we think, tangentially attempted to cut off any reliance on ***True*** by requesting the trial court to further find as follows:

> [T]he Executor moves the Court, . . . to make an additional finding of fact . . . that any provision in the SunTrust Bank Rules and Regulations that purports to treat the accounts held by [the Decedent] as joint accounts with right of survivorship is unenforceable due to a lack of mutual consent and is otherwise invalid.

Contrary to the Executor's position and much of the trial court's reasoning, the statute, as interpreted by us in ***True***, compels a holding in the present case that the documentary evidence before us is "conclusive evidence . . . of the intentions of all named [*i.e.*, the Deceased and the Survivor] that title vests in the survivor."  *See* Tenn. Code Ann. § 45-2-703(e)(1).

Tenn. Code Ann. § 45-2-703(d)(1) requires banks to "utilize account documents that enable the depositor to designate ownership interest" in any joint account.  We observed in ***Nelson*** that,

> [a]s we read this provision, a 'designation' on an account document must include 'joint tenants with the right of survivorship' or, as noted in the statute, another substantially similar expression . . . to specify that type of ownership interest. If it does not, then subsection (e)(4), which governs accounts lacking designations, will control.

***Nelson,*** 2007 WL 851265 at *11.  The statute expressly provides that "[a]ccount documents that enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account" include signature cards, deposit agreements, and CDs, the very documents utilized in the present case.  Tenn. Code Ann. § 45-2-703(d)(2)(A)-(C). Pursuant to the incorporated Rules and Regulations governing the SunTrust accounts, a "multiple-party deposit account" such as the ones in this case carries with it a right of survivorship and such designation conclusively establishes that this was the Deceased's intent.  In our view, this ends our inquiry regarding ownership of *all* of the SunTrust accounts.  There is much testimony in the record regarding the Deceased's intent, or lack thereof, to establish a right of survivorship in the SunTrust accounts.  This evidence is immaterial to our analysis of the application of the statute to the SunTrust accounts.  This is

because, under the clear language of the statute, the Deceased's intent to establish the SunTrust accounts with right of survivorship is *conclusively* established.

The trial court faults SunTrust for failing to "provide . . . [the Deceased], the opportunity to designate the depositor's intent concerning the ownership interest in a multi-party account." With all due respect to the trial court, we disagree with its characterization of what happened in this case. We find that the bank acted in a way that did afford the Deceased this opportunity.

The trial court reads the statute – and particularly subsection (d)(1) – as requiring a bank to provide a *form* on which a depositor can expressly designate by a signature the type of account that he or she wishes to open. Since the "Personal Account Signature Card" and the "Time Deposit Receipt" in this case do not have a place on which a depositor can indicate the type of account he or she is opening, the trial court reasoned that the bank failed to comply with the edict of the statute. We believe the trial court has read the statute too narrowly.

The Deceased signed a document – the "Personal Account Signature Card" – in which he acknowledged "receipt of [SunTrust's] rules and regulations." Those rules and regulations advised him that if he opened an account with another person – as he did – that SunTrust would "treat [it] *unless otherwise indicated on the Bank's records*, as 'joint tenants with right of survivorship' for all purposes, including, . . . determination of ownership upon death." (Emphasis added.) We hold that, in the absence of fraud, the providing of these rules and regulations to the Deceased, and his signing of the signature card along with another, *i.e.*, the Survivor, to set up the SunTrust accounts with language acknowledging receipt of the bank's rules and regulations, shows that SunTrust unambiguously advised the Deceased what his options were in opening a "multiple-party deposit account" or in amending such an account. *See* Tenn. Code Ann. § 45-2-703(d)(1). When he failed to designate a contrary intent on the bank's records, he became subject to the "default" position, *i.e.*, the establishment of a joint account with right of survivorship. This brings into play Tenn. Code Ann. § 45-2-703(e)(1) which, for emphasis, we quote again:

> A designation of joint tenants with right of survivorship, or substantially similar language, shall be *conclusive* evidence in any action or proceeding of the intentions of all named that title vests in the survivor.

(Emphasis added.) The same analysis applies to the CDs and the "Time Deposit Receipt" furnished by the bank as a part of the transactions involving the CDs. In the absence of fraud, there is nothing more that needs to be said in resolving this aspect of the appeal. Under the

record before us, there is conclusive evidence that the Deceased intended to open a joint account with right of survivorship.

Given our holding, we are required to address language in ***Roberts v. Roberts***, 827 S.W.2d 788, 796 (Tenn. App. 1991), providing that "[t]he statute does not apply to certificates of deposit which require no signature card and provide no withdrawal until maturity. . . ." Understandably, the trial court was reluctant to rule in direct opposition to a published decision of this Court. Following ***Roberts***, it ruled that the CDs were not to be analyzed under Section 45-2-703 despite statutory language indicating otherwise.

Simply put, we think that, on this point, ***Roberts*** was wrongly decided. In the present case, we decline to ignore the plain language of the statute extending its application to "multiple-party deposit account[s]" expressly including "a certificate of deposit, established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons. . . ." Following the language of Section 45-2-703, we conclude that the CDs were owned by the Deceased and the Survivor with right of survivorship.

V.

The Survivor also challenges the trial court's additional finding that:

> The impact of *Roberts v. Roberts*, 827 S.W.2d 788, 796 (Tenn. App. 1991) on this case is its holding that T.C.A. § 45-2-703 does not apply to certificates of deposit. Therefore, the presumptions provided by § 45-2-703(e)(4) do not apply to certificates of deposit. Without the application of . . . § 45-2-703, *Roberts* dictates that the language in the bank's documentation, regardless of the depositor's intent, controls.

(Footnote omitted.) As discussed, we have already determined that Section 45-2-703 does apply to the CDs and that the bank's documents utilized to amend or open the SunTrust accounts properly designated them as being with right of survivorship. Upon the death of the Deceased, the Survivor, as the survivor of the two, by operation of law, became the sole owner of the CDs.

VI.

In the concluding paragraph of her brief, the Survivor requests an order directing that the court costs and discretionary fees imposed against her by the trial court be remitted to her by the Executor. Our decision, favorable to the Survivor on all points, makes her the

-17-

prevailing party. On remand, the trial court is directed to enter an order taxing court costs at the trial court level to the Executor and awarding such discretionary costs to the Survivor as the trial court, in the exercise of its discretion, determines to be appropriate.

## VII.

That portion of the trial court's judgment awarding the Executor the bank accounts is reversed. We modify the judgment in favor of the Survivor to award her all of the bank accounts as well as the CDs. As modified, the judgment in favor of the Survivor is affirmed. Costs on appeal are taxed to the appellant, G. Perry Guess, Executor of the Estate of C. Charlton Howard. This case is remanded to the trial court with instructions.

_____
CHARLES D. SUSANO, JR., JUDGE